UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------X
SONDRA ERDOGAN,

                  Plaintiff,

-against-                              AMENDED COMPLAINT

COUNTY OF NASSAU, NASSAU COUNTY           10-CV-5837(SJF)(AKT)
EXECUTIVE, NASSAU COUNTY SHERIFF'S
DEPARTMENT, EDWARD REILLY, SHERIFF
OF NASSAU COUNTY FROM JUNE THROUGH
DECEMBER OF 2007, MICHAEL SPOSATO,
SHERIFF OF NASSAU COUNTYCORRECTION'S
OFFICER, MARK BARBER IN HIS INDIVIDUAL
AND OFFICIAL CAPACITY, CORPORAL
WILLIAM BAILEY, and CAPTAIN JAMES FORD,

                  Defendants.
----------------------------------------------------------------X

"[S]exual abuse of women inmates by their male guards is a pervasive and legitimate problem in both state and federal prisoners of the United States."  (Amy Laderberg, The "Dirty Little Secret:  Why Class Actions Have Emerged as the Only Viable Option for Women Inmates Attempting to Satisfy the Subjective Prong of the Eighth Amendment in Suits for Custodial Sexual Abuse, 40 Wm. & Mary L. Rev. 323 [1998]).

The Plaintiff, Sondra Erdogan, brings this action to recover damages for the abuse she sustained while an inmate at the Nassau County Correctional Center ("NCCC" of "Jail").  Ms. Erdogan was raped by the Defendant Mark Barber and she was repeatedly and continuously sexually assaulted by the defendant Mark Barber.

## JURISDICTION AND VENUE

1.     This Court has jurisdiction pursuant to 28 U.S.C. § 1331, over claims arising under 42 U.S.C. § 1983.

2.    Venue is proper in the Eastern District of New York under 28 U.S.C. § 1391(b) as the Defendants reside in and the claims arose in the Eastern District of New York.

## JURY DEMAND

3.    Pursuant to the Seventh Amendment of the United States Constitution, Ms.Erdogan requests a jury trial on all issues and claims set forth in this Complaint.

## PARTIES

4.    Plaintiff, Sondra Erdogon, presently resides in Suffolk County, New York.  From June 11, 2007 to July 12, 2007 and from July 26, 2007 to December 19, 2007, Ms. Erdogon was an inmate of the defendant facility, NCCC.  From March 22, 2010 to May 19, 2010 and from August 13, 2010 to September 24, 2010 Ms. Erdogon was a prisoner of the defendant facility, NCCC.

5.    Defendant Mark Barber was employed by Nassau County and NCCC in the year 2007.  At all times relevant to this complaint, Mark Barber was a corrections officer at NCCC, acting under color of state law, within the scope of his employment, and in his individual capacity pursuant to the statutes, ordinances, regulations, policies, customs and usage of the County of Nassau and the State of New York.

6.    Corporal William Bailey was employed by Nassau County and NCCC in the year 2007.   At all times relevant to this complaint, was a Corporal William Bailey supervising corrections officer employed by and working at NCCC, acting under color of state law, within the scope of his employment, and in his individual capacity pursuant to the statutes, ordinances, regulations, policies, customs and usage of the County of Nassau and the State of New York.

7.    Captain James Ford was employed by Nassau County and NCCC in the year 2007.  At all times relevant to this complaint, Captain James Ford was a supervising corrections

officer employed by and working at NCCC, acting under color of state law, within the scope of his employment, and in his individual capacity pursuant to the statutes, ordinances, regulations, policies, customs and usage of the County of Nassau and the State of New York.

8.    Defendant Nassau County is a municipality created under the laws of the State of New York.  It owns and operates the Nassau County Correctional Center located in East Meadow, New York, which is the primary detention facility for Nassau County, New York. Defendant NASSAU COUNTY is the entity charged by the laws of the State of New York with authority to maintain the NCCC and is responsible for the conditions of confinement and treatment of persons incarcerated at NCCC.

9.    Defendant Nassau County Executive is the Chief Executive of Nassau County and oversees all of Nassau County's governmental operations, including the operation of the NCCC. He is sued in his official capacity.

10.    Defendant Michael Sposato is sued in his official capacity as the Sheriff of Nassau County.  As head of Nassau County Sheriff's Department, Sheriff Sposato is responsible for the day-to-day operations of the Jail.  In his official capacity as Sheriff, he has the custody, control and charge of the NCCC and its inmates.

11.    Defendant Edward Reilly is sued in his official capacity as the Sheriff of Nassau County during the year of 2007.  As head of Nassau County Sheriff's Department, Sheriff Reilly was responsible for the day-to-day operations of the Jail.  In his official capacity as Sheriff, he had the custody, control and charge of the NCCC and its inmates.

12.    Defendants are legally responsible, in whole or in part, for the operation of the NCCC, for the conditions there and the health and safety of persons confined or incarcerated there.

13.     At all relevant times, Defendants or their predecessors in office have acted or failed to act as alleged herein, under color of state law.

## FACTUAL ALLEGATIONS

14.     The NCCC is an institution within the meaning of 42 U.S.C. Section 1997(1).

15.     Persons confined to the NCCC include pre-trial detainees and post-conviction inmates.

16.     From June 11, 2007 to July 12, 2007 and from July 26, 2007 to December 19, 2007, Ms. Erdogon was an inmate at NCCC and, from March 22, 2010 to May 19, 2010 and from August 13, 2010 to September 24, 2010 Ms. Erdogon was an inmate at NCCC.

17.     While an inmate at NCCC from June 11, 2007 to July 12, 2007 and from July 26, 2007 to December 19, 2007, Ms. Erdogon was raped and was repeatedly and continuously sexually abused by defendant Correction Officer Mark Barber.

18.     The sexual contact with Ms. Erdogon by defendant Correction Officer Mark Barber was by law, unlawful because an inmate is deemed incapable of consenting to sexual contact with prison employees pursuant to New York Penal Law Section 130.05(3)(e).

19.     Defendant Correction Officer Mark Barber kissed the lips of Ms. Erdogon.

20.     Defendant Correction Officer Mark Barber touched the breasts and other intimate parts of Ms. Erdogon.

21.     Defendant Correction Officer Mark Barber engaged in sexual intercourse with Ms. Erdogon.

22.     Defendant Correction Officer Mark Barber would give Ms. Erdogon cigarettes and matches and would put money in her commissary.  Ms. Erdogon did not ask for the cigarettes and matches nor did she request that Defendant Correction Officer Barber put money

in her commissary.

23.     Defendant Correction Officer Mark Barber would tell Ms. Erdogon to call him on his private telephone.

24.     Defendant Correction Officer Mark Barber would instruct Ms. Erdogon to call her brother and arrange for a three-way call in order to conceal the fact that she was calling defendant Correction Officer Mark Barber as he had instructed.

25.     Defendant Correction Officer Mark Barber would tell Ms. Erdogon that she was his girlfriend.

26.     Defendant Correction Officer Mark Barber had access to a private office which he would use to see Ms. Erdogon in private so that he could engage in the unlawful sexual conduct with Ms. Erdogon.  He would take her into a bathroom to see her privately and he would also take her into a stairwell to see her privately.

### Nassau County's Custom, Policy and Practice of Unconstitutional Conduct

27.     Defendants have engaged in and continue to engage in a pattern or practice of sexually abusing female inmates and of failing to protect female inmates in the NCCC from the undue risk of rape and sexual abuse by failing to adequately supervise, train, and discipline NCCC correction officers.

28.     Defendants have engaged and continue to engage in a pattern or practice of allowing the sexual abuse and sexual assault and rape of female inmates in the NCCC.  The sexual abuse, sexual assault and rape includes, but is not limited to:

        a.     making contact between Defendant Barber's penis and the mouth of female inmates;

        b.     soliciting oral sex from female inmates;

        c.     receiving oral sex from female inmates;

d.   asking female inmates to show Defendant Barber their breasts;

e.   engaging in sexual intercourse with female inmates to whom Defendant Barber was not married;

f.   kissing the lips of female inmates; and

g.   touching the breasts and other intimate parts of female inmates.

29.   Defendants, through their acts or omissions, have tolerated and condoned and continue to tolerate and condone the sexual abuse, assault and rape against female inmates at NCCC described herein.  These acts or omissions include, but are not limited to:

a.   the failure to train and supervise correctional staff adequately to prevent the abuse perpetrated against the female inmates;

b.   the failure to maintain and enforce adequate policies pertaining to the abuse perpetrated against the female inmates;

c.   the failure to adequately investigate complaints alleging correctional staffs' abuse of female inmates; and

d.   the failure adequately to discipline officers who have sexually abused, sexually assaulted and raped female inmates.

30.   Defendants, specifically but not limited to Corporal William Bailey and Captain James Ford,  have been aware of the unlawful conditions alleged in the above paragraphs and incorporated herein, for a substantial period of time and have failed to adequately address the conditions described in the above paragraphs and incorporated herein, despite their knowledge of this abuse.

31.   NCCC is deliberately indifferent to the abuse suffered by female inmates in violation of the Eighth Amendment to the United States Constitution.  From a time period pre-dating the year 2007 up and until September 24, 2010, the Defendants continued to allow and permit Defendant Mark Barber to be employed at NCCC where he had unfettered access to

female inmates.

32.     The unconstitutional and tortious acts of the defendant officer were not isolated incidents.  There was a custom, policy, pattern and practice in Nassau County beginning years before the rape and sexual abuse of Ms. Erdogon and continuing throughout her incarceration, of assisting, ratifying and acquiescing in the practice of failing to conduct reasonable criminal investigations, failing to investigate evidence of correctional officer misconduct, and covering up unconstitutional misconduct.

33.     NCCC policymakers were on notice of, but deliberately indifferent to the sexual abuse being perpetrated upon female inmates.

34.     By the time of Ms. Erdogon's incarceration, supervisors, specifically Corporal William Bailey and Captain James Ford as well as NCCC policymakers were on notice of, and specifically knew, that Correction Officer Mark Barber was engaging in sexual intercourse and sexually abusing female inmates.

35.     In fact, when Ms. Erdogon was incarcerated in Nassau County Correctional Center from March 22, 2010 to May 19, 2010, she was then moved to a Suffolk County facility even though she had a case pending in Nassau County.  Correction Officer Mark Barber was still employed at the Nassau County Correctional Center.  Instead of removing him from his duties and employment, Ms. Erdogon was housed at a different facility.  Correction Officer Mark Barber was permitted to work in his capacity as a Correction Officer.

36.     And, when Ms. Erdogon was incarcerated in Nassau County Correctional Center from August 13, 2010 to September 24, 2010, she was moved to a Suffolk County facility even though she had a case pending in Nassau County.  Correction Officer Mark Barber was still employed at the Nassau County Correctional Center.  Instead of removing him from his duties

and employment, Ms. Erdogon was housed at a different facility.

## DAMAGES

37.     This action seeks damages for the period from June 11, 2007 through the present. The defendants' unlawful, intentional, willful, purposeful, deliberately indifferent, reckless, bad-faith and/or malicious acts, misdeeds and omissions caused Ms. Erdogon to endure over six months of cruel and unusual punishment.

38.     As a direct and proximate result of the acts of, and/or deliberate indifference of the defendants, the injuries and damages sustained by Ms. Erdogon from the deprivation of civil rights include: violation of her clearly established rights under the Eighth Amendment to the United States Constitution; personal injuries; pain and suffering; severe mental anguish; emotional distress; extreme fear; infliction of physical illness and injury resulting from her confinement; inadequate medical care; humiliation, indignities, embarrassment, and degradation.

39.     All the acts, misdeeds and omissions committed by the individual defendant described herein for which liability is claimed were done intentionally, willfully, purposefully, knowingly, unlawfully, maliciously, wantonly, recklessly, and/or with bad faith, and said proscribed conduct of the individual defendant meets all of the standards for imposition of punitive damages.

## CAUSES OF ACTION

40.     With respect to each cause of action, Plaintiff Sondra Erdogon incorporates by reference each paragraph of this complaint.

## COUNT I:

### Eighth Amendment and Fourteenth Amendment Claim

41.     The acts and omissions alleged in the above paragraphs and incorporated herein

violate the rights, privileges and immunities of persons confined in the NCCC, and specifically the plaintiff herein, secured or protected by the Eighth and Fourteenth Amendments to the Constitution of the United States.

42.     The acts and omissions alleged in the above paragraphs constitute a pattern and practice of conduct by Defendants that deprives persons confined in the NCCC, and particularly deprived Ms. Erdogon of rights, privileges, or immunities secured or protected by the Eighth and Fourteenth Amendments to the Constitution and laws of the United States.

43.     Defendants participated directly in the deprivation of plaintiff's rights to be free from cruel and unusual punishment.

44.     Defendants participated in and/or allowed this cruel and unusual punishment to persist for the entire time period in which Ms. Erdogon was housed at their facility in the year 2007, specifically from June 11, 2007 to July 12, 2007 and from July 26, 2007 to December 19, 2007.

45.     Ms. Erdogon faced substantial risk of serious harm.

46.     Defendants disregarded the substantial risk of serious harm that Ms. Erdogon faced each and every day of her 2007 commitment in the Defendants' facility.

47.     Defendants failed to take reasonable measures to abate the harm faced by Ms. Erdogon.

48.     It is sufficiently clear that a reasonable officer in Defendant Mark Barber's position would understand that what he was doing violated Ms. Erdogon's Eighth Amendment Right to be free from cruel and unusual punishment.

49.     Defendants failed to remedy the deprivation – they persistently and continuously ignored Mark Barber's behavior of sexually abusing and raping female inmates.

50.    Defendant supervisors, specifically Corporal William Bailey and Captain James Ford were grossly negligent in supervising Mark Barber, when they were specifically aware of and informed of Mark Barber's clear and inappropriate conduct and behavior, conduct which violated Correctional Center Rules and Regulations; instead of disciplining, training or firing Defendant Barber, Defendant Bailey and/or Defendant Ford ignored the conduct and failed to take action when informed of the clear and inappropriate conduct and behavior, they failed to take action and failed to discipline and ignored the conduct which violated Correctional Center Rules and Regulations, they failed to take action and failed to discipline and ignored the conduct of sexually abusing female inmates, and they failed to take action and failed to discipline and ignored the conduct of raping female inmates.

51.    Defendants were deliberately indifferent to plaintiff's right to be free from cruel and unusual punishment by ignoring Mark Barber's behavior and conduct of sexually abusing and raping female inmates.

52.    Defendants had knowledge of the abuse being inflicted by defendant Barber upon female inmates, should have had reason to know of the conduct, or were deliberately indifferent to the conduct and abuse as Defendants Bailey and Ford were specifically informed of the clear and inappropriate conduct and behavior, conduct which violated Correctional Center Rules and Regulations by several Correctional Center officers who witnessed inappropriate conduct, who witnessed conduct which violated Correctional Center Rules and Regulations perpetrated by Mark Barber and who specifically spoke to and with Defendants Bailey and Ford and who specifically complained of the inappropriate conduct and behavior, conduct which violated Correctional Center Rules and Regulations, to Defendants Bailey and Ford.

## COUNT II:

**42 U.S.C. § 1983 Supervisory Liability**

53.      Sheriff Edward Reilly and Sheriff Michael Sposato, Corporal William Bailey, and Captain James Ford acting deliberately, recklessly and under color of law, were, at the relevant times, supervisory personnel overseeing NCCC and its officers with oversight responsibility for training, hiring, screening, instruction, supervision and discipline of defendant Mark Barber.

54.      Defendant supervisors were personally involved in both the deprivation of Ms. Erdogon's constitutional rights and in creating or condoning the policy or custom of failing to take preventative and remedial measures to guard against such constitutional deprivations.

55.      Defendant supervisors were reckless in their failure to supervise defendant Mark Barber and either knew or should have known that defendant Mark Barber was sexually abusing female inmates including Ms. Erdogon.

56.      These supervisory defendants knew or in the exercise of due diligence should have known that the conduct of the named defendant Mark Barber against Ms. Erdogon was likely to occur.

57.      The failure of these supervisory defendants to train, supervise and discipline the named individual defendant amounted to gross negligence, deliberate indifference or intentional misconduct which directly caused the injuries and damages set forth above.

## COUNT III:

**42 U.S.C. § 1983 *Monell* Claim for Unconstitutional Custom or
Policy And Failure to Supervise and Train**

58.      The County of Nassau, by and through its final policymakers, had in force and effect during the period of time in which Ms. Erdogon was incarcerated in the Nassau County

Correctional Center in 2007 and for years beforehand, a policy, practice or custom of condoning conduct of Correction Officers' abuse of female inmates.

59.    The County of Nassau systemically failed adequately to train its correction officers and supervisor officers, to conduct constitutionally adequate investigations, accurately document the movement of inmates and ensure that inmates were not abused.

60.    The County of Nassau failed to adequately supervise its correction officers and supervisors in that officers knew that in this climate of lax supervision, they were free to deviate from constitutional requirements.

61.    The County of Nassau, by and through its final policymakers, failed to adequately discipline their correction officers for misconduct, though it was foreseeable that constitutional violations of the type Ms. Erdogon suffered would be a predictable result of such failures.

62.    As set forth above, final policymakers for the County of Nassau had actual or constructive notice of such failures to train, supervise and discipline and provide policy to its employees, and failed to provide training, supervision, or discipline despite an obvious need that such training, supervision and discipline was required, where Defendants knew that it was foreseeable that officers would predictably confront these situations and as a result of the failure to train and supervise, constitutional violations would result.

63.    Such failures to train, supervise and discipline, and such unconstitutional municipal customs, practices and/or policies, amounted to deliberate indifference to the constitutional rights of inmate prisoners such as Ms. Erdogon and were the moving force behind the rape and sexual abuse suffered by Ms. Erdogon as well as all the ongoing injuries and damages set forth herein.

**WHEREFORE**, Sondra Erdogon prays as follows:

A.   That the Court award compensatory damages to her and against the defendants, jointly and severally, in an amount to be determined at trial;

B.   That the Court award punitive damages to her, and against all individual defendants, in an amount to be determined at trial, that will deter such conduct by defendants in the future;

C.   For a trial by jury;

D.   For pre-judgment and post-judgment interest and recovery of her costs, including reasonable attorneys' fees pursuant to 42 U.S.C. § 1988 for all 42 U.S.C. § 1983 claims; and

E.   For any and all other relief to which she may be entitled.

Respectfully submitted,

BARKET MARION EPSTEIN & KEARON, LLP

By:     /s/ Amy B. Marion
Amy B. Marion, Esq.
666 Old Country Rd., Suite 700
Garden City, NY 11530