**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
------------------------------------------------------------X
SONDRA ERDOGAN,

                      Plaintiff,

               - against -

NASSAU COUNTY, NASSAU COUNTY
EXECUTIVE, NASSAU COUNTY SHERIFF'S
DEPARTMENT, EDWARD REILLY,
SHERIFF OF NASSAU COUNTY FROM
JUNE THROUGH DECEMBER OF 2007,
MICHAEL SPOSATO, SHERIFF OF NASSAU
COUNTY FROM FEBRUARY 22, 2008 TO
PRESENT, NASSAU COUNTY CORRECTION'S
OFFICER MARK BARBER IN HIS INDIVIDUAL
AND OFFICIAL CAPACITY,

                      Defendants.
------------------------------------------------------------X

                      **MEMORANDUM**
                      **AND ORDER**

                10-CV-05837 (AKT)

**A. KATHLEEN TOMLINSON, Magistrate Judge:**

      Plaintiff Sondra Erdogan ("Plaintiff") seeks leave to amend her Section 1983 Complaint against Defendants Nassau County, the Nassau County Executive, Nassau County Sheriff's Department, Edward Reilly (Sheriff of Nassau County from June through December of 2007) ("Defendant Reilly"), Michael Sposato (Sheriff of Nassau County from February 22, 2008 to present) ("Defendant Sposato") (collectively, the "County Defendants"), and Nassau County Grievance Officer Mark Barber ("Defendant Barber").
*See* DE 45.  In sum, Plaintiff seeks to add two of Defendant Barber's supervisors as defendants.  *See generally id*.  The County Defendants oppose the motion.  *See* DE 47.  For the reasons set forth below, Plaintiff's motion is DENIED.

# I.    BACKGROUND

At the time of the acts giving rise to the Complaint, Plaintiff was a female inmate at the Nassau County Correctional Center ("NCCC"). Compl. [DE 1] ¶ 15. Defendant Barber was a Corrections Officer at the NCCC. *Id*. ¶ 14. Plaintiff alleges that during her time as an inmate at NCCC, she was "raped and . . . repeatedly and continuously sexually abused" by Defendant Barber. *Id*. ¶ 15. Plaintiff asserts that Defendant Barber "kissed [Plaintiff's] lips . . . touched her breasts and other intimate parts" and "engage[d] in sexual intercourse with her." *Id*. ¶¶ 17-19. Moreover, Plaintiff claims Defendant Barber had access to a private office which he would use to engage in sexual contact with her. *Id*. ¶ 24.

Plaintiff filed her Complaint on December 15, 2010, alleging (i) violations of her Eighth Amendment right to be free from cruel and unusual punishment; (ii) supervisory liability under Section 1983 against Sheriff Reilly and Sheriff Sposato; and (iii) Section 1983 *Monell* liability against Nassau County. Compl. ¶¶ 39-61. Around the same time, two similar complaints were filed by other plaintiffs who also alleged abuse by Defendant Barber while serving time at the NCCC. *See Bridgwood v. Cnty. of Nassau, et al.*, No. 10-cv-830; *Stamile v. Cnty of Nassau, et al.*, No. 10-cv-2632.

On April 15, 2011, the County Defendants moved to stay all proceedings in this matter and the two related matters based on ongoing criminal proceedings commenced by the Nassau County District Attorney's Office against Defendant Barber. DE 10. Judge Feuerstein granted the County Defendants' motion on April 19, 2014. DE 11. On August 28, 2012, Plaintiff's counsel informed the Court that the criminal trial against Defendant Barber had concluded. DE 18. Stemming from his conduct involving the Plaintiff, Defendant Barber was convicted of Sexual Abuse in the Second Degree, Receiving

Reward for Official Misconduct, and eleven counts of Official Misconduct. *Id.* The parties subsequently submitted a proposed discovery schedule in all three cases and Judge Feuerstein referred the matters to this Court to oversee discovery. DE 12, 20. The Court held an Initial Discovery Conference with the parties in this case and the related matters on January 9, 2013. DE 21. The Court determined that the three related matters would be consolidated solely for purposes of discovery. *Id.* An Initial Case Management and Scheduling Order was then entered setting forth the applicable discovery deadlines. *Id.*; DE 32. The deadline for joinder of additional parties and amendment of pleadings was March 8, 2013. DE 32.

On March 5, 2013, the County Defendants submitted a letter motion to this Court requesting that all discovery be stayed pending the resolution of Defendant Barber's appeal of his criminal conviction. DE 25. Plaintiff Erdogan opposed the motion, requesting that the Court sever her action from the other actions consolidated for discovery purposes in order to allow discovery to proceed in her case. DE 28. The Court denied, without prejudice, the County Defendants' motion to stay, and allowed the Defendants to seek leave to renew before Judge Feuerstein. DE 36. Defendants never renewed their motion before Judge Feuerstein. Thus, the Court hereby deems MOOT Plaintiff's motion to sever.[1]

Plaintiff filed a motion to amend the Complaint on March 19, 2013, pursuant to Fed. R. Civ. P. 15. *See* Mem. of Law in Supp. of Mot. to Am. Pleadings ("Pl.'s Mem.") [DE 45-1] at 4. Plaintiff seeks to add two of Defendant Barber's supervisors as

---

[1]     At a discovery status on April 17, 2013, counsel for all of the parties in the related actions consented to a stay of discovery until the Court's decisions on pending dispositive motions. DE 41.

defendants, namely, Nassau County Corrections Officers Corporal William Bailey ("Bailey") and Captain James Ford ("Ford") (collectively, the "Proposed Defendants"). *Id.* Plaintiff alleges (i) violations of her Eighth Amendment right to be free from cruel and unusual punishment and (ii) supervisory liability under Section 1983 against Bailey and Ford. *See* Proposed Amended Compl. ("PAC"), attached as Ex. 2 to Pl.'s Mem. [DE 45-2] ¶¶ 41-57. The County Defendants oppose the motion, arguing, *inter alia*, that Plaintiff has not demonstrated the requisite personal involvement of Bailey and Ford. *See* DE 47. On April 12, 2013, pursuant to 28 U.S.C. § 636(c), the parties filed a Consent to the Jurisdiction of a U.S. Magistrate Judge for all purposes and the case was then reassigned to this Court. DE 40, 44.

## II.    STANDARD OF REVIEW

### A.    Rule 15(a)

Rule 15(a) of the Federal Rules of Civil Procedure provides that in cases where a party cannot amend as a matter of course, "a party may amend its pleading only with the opposing party's written consent or the court's leave." *See* Fed. R. Civ. P. 15(a); *see also Lucente v. Int'l Bus. Machs. Corp.*, 310 F.3d 243, 258 (2d Cir. 2002); *Branum v. Clark*, 927 F.2d 698, 705 (2d Cir. 1991); *Guity v. Uniondale Union Free School Dist.*, NO. CV 12-1482, 2014 WL 795576, at *3 (E.D.N.Y. Feb. 27, 2014). Leave to amend is within the Court's discretion. *Krupski v. Costa Crociere S. p. A.*, 130 S.Ct. 2485, 2489 (2010) (noting that Rule 15(a) "gives a district court discretion to decide whether to grant a motion to amend a pleading before trial"); *MHANY Mgmt. v. Cnty. of Nassau*, 843 F. Supp. 2d 287, 340 (E.D.N.Y. 2012) (noting that "it is ultimately within the sound discretion of the court whether to grant leave to amend"). A court "should freely give leave when justice so requires." Fed.

R. Civ. P. 15(a); *Iqbal v. Ashcroft*, 574 F.3d 820, 822 (2d Cir. 2009) (quoting Fed. R. Civ. P.

15(a)); *Grace v. Rosenstock*, 228 F.3d 40, 56 (2d Cir. 2000) (same); *Guideone Specialty Mut.*

*Ins. Co. v. Hapletah*, No. CV 2005-1401, 2006 WL 1455468, at *1 (E.D.N.Y. May 24, 2004)

(noting that Rule 15(a) "provides for a liberal amendment of pleadings").

Where a proposed amendment adds a new party, the Court also looks to Rule 21,

"which provides that '[o]n motion or on its own, the court may at any time, on just terms, add

or drop a party.'" *Allstate Ins. Co. v. Elzanaty*, No. 11-cv-3862, 2013 WL 65986, at *23

(E.D.N.Y. Jan. 7, 2013) (noting that where a proposed amendment adds a new party, "the

propriety of the amendment is governed by F. R. Civ. P. 21") (*citing* Fed. R. Civ. P. P. 21;

*Garcia v. Pancho Villa's of Huntington Vill., Inc.,* 268 F.R.D. 160, 165 (E.D.N.Y. 2010);

*City of Syracuse v. Onondaga Cty.,* 464 F.3d 297 (2d Cir. 2006)). "Although Rule 21

contains no restrictions on when motions to add or drop parties must be made, the timing of

the motion may influence the court's discretion in determining to grant it. Thus, the court

typically will deny a request that comes so late in the litigation that it will delay the case or

prejudice any of the parties to the action." *Allstate*, 2013 WL 65986, at *23 (citing *City of*

*Syracuse*, 464 F.3d at 308). "Rule 21 grants the court broad discretion to permit the addition

of a party at any stage in the litigation." *Allstate*, 2013 WL 65986, at *23 (citing *Sullivan v.*

*West New York Res., Inc.,* No. 01 Civ. 7847, 2003 WL 21056888, at * 1 (E.D.N.Y. Mar. 5,

2003)). In general, in deciding whether to permit the addition of a defendant, courts apply

the "same standard of liberality afforded to motions to amend pleadings under Rule 15."

*Allstate*, 2013 WL 65986, at *23 (citing *Soler v. G & U, Inc.,* 86 F.R.D. 524, 528

(S.D.N.Y.1980)); *Hai Yang Liu v. 88 Harborview Realty, LLC*, No. 11 Civ. 1033, 2014 WL

1053719, at *6 n.1 (S.D.N.Y. Mar. 12, 2014).

Notwithstanding the foregoing principles, leave to amend may be denied where there is "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of the amendment, etc." *Williams v. Citigroup Inc.*, 659 F.3d 208, 213-214 (2d Cir. 2011) (quoting *Foman v. Davis*, 371 U.S. 178, 182, 83 S. Ct. 227, 9 L. Ed. 2d 222 (1962)); *SCS Commc'n, Inc. v. Herrick Co., Inc.*, 360 F.3d 329, 345 (2d Cir. 2004) (noting that under Rule 15(a), "leave to amend a pleading may *only* be given when factors such as undue delay or undue prejudice to the opposing party are absent") (emphasis in original).

"To determine what constitutes prejudice, the Court considers whether the amendment would: (i) require the opponent to expend significant additional resources to conduct discovery and prepare for trial; (ii) significantly delay the resolution of the dispute; or (iii) prevent the plaintiffs from bringing a timely action in another jurisdiction." *Hernandez v. Immortal Rise, Inc.*, No. 11 CV 4360, 2013 WL 1703529, at *4 (E.D.N.Y. Apr. 19, 2013) (internal quotations omitted) (citing *Block v. First Blood Assocs.*, 988 F.2d 344, 350 (2d Cir.1993)); *Themis Capital, LLC v. Democratic Republic of Congo*, No. 09 CIV. 1652, 2013 WL 1687198, at *4 (S.D.N.Y. Apr. 18, 2013) (same). "The party opposing the motion for leave to amend has the burden of establishing that an amendment would be prejudicial." *Fariello v. Campbell*, 860 F. Supp. 54, 70 (E.D.N.Y. 1994); *Saxholm AS v. Dynal, Inc.*, 938 F. Supp. 120, 123 (E.D.N.Y. 1996).

Futility "turns on whether a proposed pleading would be able to withstand a dispositive pretrial motion." *Themis Capital*, 2013 WL 1687198, at *6 (citing *Parker v. Columbia Pictures Indus.*, 204 F.3d 326, 339 (2d Cir. 2000); *Touchtunes Music Corp. v.*

*Rowe Int'l Corp.*, 847 F. Supp. 2d 606, 621 (S.D.N.Y. 2012)). The opposing party likewise bears the burden of establishing that an amendment would be futile. *See Balk v. New York Institute of Technology*, No. CV 11-509, 2013 WL 6990767, at *5 (E.D.N.Y. Sept. 30, 2013); *Blaskiewicz v. County of Suffolk*, 29 F. Supp. 2d 134, 137-8 (E.D.N.Y. 1998) (citing *Harrison v. NBD Inc.*, 990 F. Supp. 179, 185 (E.D.N.Y. 1998)).

## B. Rule 16(b)

Moreover, where, as here, a motion to amend is filed after a deadline set by the Court's Order, the motion is also subject to the more demanding standard of Rule 16(b), which requires "good cause" for leave to amend. *See Parker*, 204 F.3d at 340; *Ricciardi v. Kimco Facilities Servs. Corp.*, No. 10-CV-5731, 2012 WL 6761533, at *1 (E.D.N.Y. June 12, 2012) *adopted by* 2013 WL 42416 (E.D.N.Y. Jan. 3, 2013); *Alexander v. Westbury Union Free Sch. Dist.*, 829 F. Supp. 2d 89, 117 (E.D.N.Y. 2011); *Sokol Holdings, Inc., v. BMB Munai, Inc.*, 05-CV-3749, 2009 WL 2524611, at *7 (S.D.N.Y. Aug. 14, 2009). "Under Rule 16(b) . . . the mere absence of prejudice, bad faith, futility, or similar factors is not sufficient to constitute 'good cause.'" *Rapture Shipping Ltd. v. Allround Fuel Trading Chemoil B.V.*, No. 03-CV-738, 2006 WL 3057294, at *2 (S.D.N.Y. Oct. 27, 2006) (citing *Carnrite v. Granada Hospital Group, Inc.*, 175 F.R.D. 439, 448 (W.D.N.Y 1997)).

Pursuant to Rule 16(b), the court must enter a scheduling order setting deadlines for subsequent proceedings in the case, including "the time to join other parties [and] amend the pleadings." Fed. R. Civ. P. 16(b). "By limiting the time for amendments, the rule is designed to offer a measure of certainty in pretrial proceedings, ensuring that at some point both the parties and the pleading will be fixed." *See Parker*, 204 F.3d at 339-

40 (internal quotations omitted); *accord Ricciardi*, 2012 WL 6761533, at *1. In certain cases, however, the court may determine that a deadline "cannot reasonably be met despite the diligence of the party seeking the extension." *Parker*, 204 F.3d at 339 (internal quotations omitted). "In such cases, where the moving party has demonstrated good cause, the court may grant leave to amend the scheduling order to extend the deadline." *Id.*; *see 246 Sears Road Realty Corp. v. Exxon Mobil Corp.*, No. 99-CV-889, 2012 WL 4174862, at *9 (E.D.N.Y. Sept. 18, 2012).

"Good cause in this context depends on the diligence of the moving party, and, to satisfy the standard, the movant must demonstrate that is has been diligent in its effort to meet the Court's deadlines." *Sokol*, 2009 WL 2524611, at *7 (internal citations and quotations omitted); *see Enzymotec Ltd. V. NBTY, Inc.*, 754 F. Supp. 2d 527, 536 (E.D.N.Y. 2011); *Spinelli v. Sec'y of Dep't of Interior*, No. CV 99-8163, 2006 WL 1790077, *1 (E.D.N.Y. June 27, 2006) (finding of good cause requires that "the moving party must, at a minimum, make a showing of diligence") (citing *Grochowski v. Phoenix Const.*, 318 F.3d 80, 86 (2d Cir. 2003)). "In other words, the party must show that, despite its having exercised diligence, the applicable deadline could not have been reasonably met." *Sokol*, 2009 WL 2524611, at *7 (citing *Rent-A-Center Inc. v. 47 Mamaroneck Ave. Corp.*, 215 F.R.D. 100, 104 (S.D.N.Y. 2003)).

A party is not considered to have acted diligently where the proposed amendment is based on information that the party knew, or should have known, in advance of the motion deadline. *See Parker*, 204 F.3d at 340-41; *Sokol*, 2009 WL 2524611, at *8. In determining whether the good cause standard is met, "the primary consideration is whether the moving party can demonstrate diligence[,]" but that is not the only

consideration. *Kassner v. 2nd Ave. Delicatessen Inc.*, 496 F.3d 229, 244 (2d Cir. 2007).

"The district court, in the exercise of its discretion under Rule 16(b), also may consider other relevant factors including, in particular, whether allowing the amendment of the pleading at this stage of the litigation will prejudice defendants." *Id.* at 243-44; *Guity*, 2014 WL 795576, at *4 (same); *Salomon v. Adderley Indus., Inc.*, --- F. Supp. 2d ---, 2013 WL 4308569, at *2 (S.D.N.Y. Aug. 16, 2013) (same).

C. **Rule 15(c)**

When an amended pleading changes a party or a party's name and the statute of limitations has run, the party seeking the amendment must also comply with Rule 15(c). *Krupski*, 130 S. Ct. at 2489. Rule 15(c)(1) provides in pertinent part that an amendment relates back to the date of the original pleading when:

> (B) the amendment asserts a claim or defense that arose out of the conduct, transaction or occurrence set out – or attempted to be set out – in the original pleading; or
>
> (C) the amendment changes the party or the naming of the party against whom a claim is asserted, if Rule 15(c)(1)(B) is satisfied and if, within the period provided by Rule 4(m) for serving the summons and complaint, the party to be brought in by the amendment:
>
> > (i) received such notice of the action that it will not be   prejudiced in defending on the merits; and
> >
> > (ii) knew or should have known that the action would have been brought against it, but for a mistake concerning the proper party's identity.

Unlike Rule 15(a), which, by its terms, gives discretion to the court in deciding whether to grant or deny a motion to amend, the language of Rule 15(c) is mandatory. *Krupski*, 130 S. Ct. at 2496; *Feliciano v. County of Suffolk*, No. CV 04-5321, 2013 WL 1310399, at *6 (E.D.N.Y. Mar. 28, 2013). Thus, it is improper to consider factors such

as "undue delay" or "dilatory motive" in considering whether an amended pleading relates back. *Id*.

## III.   DISCUSSION

### A.   Plaintiff's Position

First, Plaintiff argues that leave to amend should be granted under Rule 16(b) because she has only recently been provided with records from the District Attorney's Office investigation into the incidents giving rise to the Complaint. Pl.'s Mem. at 2. Those records reveal that the Proposed Defendants were aware of the misconduct committed by Defendant Barber, according to the Plaintiff. Pl.'s Mem. at 2. As such, Plaintiff claims that she did not name the Proposed Defendants initially because "she did not have the supporting documentation to confirm her suspicions regarding the knowledge and misconduct of these individuals." Pl.'s Mem. at 2-3. Further, Plaintiff maintains that she has not exhibited undue delay because she is filing this motion and the PAC at a time when discovery has not yet been completed, document disclosure is ongoing, and depositions have not commenced. *Id.* In addition, Plaintiff stresses that the Motion to Amend was filed within a week after the Court's March 8, 2013 deadline to amend. *Id*. at 7. Finally, Plaintiff argues that Defendants would not suffer prejudice as a result of the Amended Complaint. *Id*. at 8.

Moreover, Plaintiff maintains that leave to amend should not be denied due to futility under the Rule 15(a) analysis because the new claims have "colorable merit." Pl.'s Mem. at 4. In support of her argument, Plaintiff relies on the documents from the District Attorney's file, attached as Exhibits 2, 3, and 4 to her memorandum. Exhibit 2 contains excerpts of "an interview of [Proposed Defendant Bailey] in which he tells District Attorney investigators that he had concerns about Defendant Barber's relationship with Plaintiff

Erdogan."[2] Pl.'s Mem. at 1-2 and Ex. 2. According to the investigative report, Proposed Defendant Bailey thought Defendant Barber's conduct with Plaintiff was inappropriate and he told Defendant Barber to visit Plaintiff less often and to keep a low profile. Pl.'s Mot., Ex. 2. Bailey also discussed his concerns with Proposed Defendant Ford and suggested that it might be best to keep Defendant Barber out of the building. *Id*. Ford confirmed that he recalled having conversations with Bailey as well as with Officer Regina Lee about Barber and that he spoke to Barber about his relationship with the Plaintiff. *Id.* Ford noted that even though it is against jail policy for officers to fraternize with inmates, he did not report Defendant Barber's inappropriate relationship with Plaintiff to Internal Affairs. *Id* at 2. At Exhibit 3, Corrections Officer Russell states that he felt uncomfortable about Defendant Barber's relationship with Plaintiff Erdogan because they seemed too close and it was not a normal inmate/officer relationship. Pl.'s Mem., Ex. 3. Rusell reported his concerns to Proposed Defendant Ford on several occasions. *Id.* Finally, according to Exhibit 4, Corrections Officer Joseph informed Defendant Bailey that she had observed Barber speaking to some inmates for long periods. Pl.'s Mem., Ex. 4 at 1. Based on the foregoing information, Plaintiff argues that her claims are not futile. *See* Pl.'s Mem. at 5-6.

Finally, Plaintiff maintains that she has alleged the requisite personal involvement required by *Ashcroft v. Iqbal*, 556 U.S. 662,129 S. Ct. 1937 (2009), because the PAC

> sets forth that the proposed Defendants themselves were acting along with, were accomplices with, and conspired with Defendant Barber to violate the Eighth Amendment

---

[2]     The Court is unable to tell from Exhibit 2, which is substantially redacted, who conducted the interview with Corporal Bailey and when that interview took place. By contrast, it is clear that the interview of Corrections Officer Catilque Joseph, which is attached as Exhibit 4 to Plaintiff's Memorandum, was conducted on October 23, 2009 by the Nassau County District Attorney's Investigator, William Napolitano and Sgt. Thomas Saitta of the Sheriff's Internal Affairs Unit.

> rights of Plaintiff by covering up Barber's violations and
> misconduct, by not reporting his misconduct, by not
> disciplining him, and by allowing him to continue to have
> unfettered access to female inmates, even after knowing of
> his misconduct, so that he could continue to rape and abuse
> them.

Reply Mem. in Supp. of Pl.s' Mot. to Amend ("Pl.'s Reply") DE [46] at 1.

### B.     The County Defendants' Position

First, The County Defendants argue that Plaintiff's proposed amendments are futile

because they cannot survive a motion to dismiss under the standard set forth in *Iqbal* by the

Supreme Court. *See* Defs.' Mem. in Opp. to Pl.'s Mot. to Amend ("Defs.' Opp.") [DE 47] at

6 (citing *Iqbal*, 556 U.S.129).  The County Defendants acknowledge that the Proposed

Defendants were informed of Defendant Barber's non-criminal and non-constitutional

violations of NCCC rules by other Corrections Officers, but argue that the Proposed

Defendants were never involved in, informed about, or aware of the criminal sexual abuse

and rape of Plaintiff.  *Id*. at 6.  The County Defendants further maintain that the investigation

materials from the District Attorney's Office do not support Plaintiff's claims that the

Proposed Defendants knew about such abuse.  *Id*. at 7-8.  Furthermore, the County

Defendants claim that the PAC is "replete with undated and unclear allegations against [the]

Proposed Defendants" and the PAC does not identify what actions the Proposed Defendants

took to violate Plaintiff's constitutional rights.  *Id*. at 8-9.  The Proposed Defendants will be

prejudiced by the Amended Complaint, the County Defendants assert, because they will

"forego a meaningful opportunity to participate in discovery, dispositive motions, and defend

this new and distinct theory of liability."  Defs.' Opp. at 9.

The County Defendants also argue that Plaintiff's claims are futile under Rule 15(a)

because they do not relate back to a timely filed Complaint in accordance with Rule 15(c).

Defs.' Opp. at 10. The Proposed Defendants did not receive actual or constructive notice of the action, the County Defendants aver, because (i) Plaintiff has not alleged that actual notice was given within 120 days after the original Complaint was filed; and (ii) Plaintiff has not demonstrated that "the attorneys for the County Defendants . . . knew or should have known which . . . corrections officers, if any, would be added within the limitations period." *Id.* at 11. Specifically, the County Defendants point out that Plaintiff failed to make any effort to put counsel on notice that other individuals might be sued and failed to provide "John Does" to serve as placeholders in the Complaint. Defs.' Opp. at 12-13.

Further, the County Defendants argue that Plaintiff's omission of the Proposed Defendants from the initial pleading is not an excusable mistake of law under Rule 15(c)(1)(C) and that this not a case of "misnomer or misidentification." Defs.' Opp. at 12-13. Rather, according to the County Defendants, Plaintiff simply "waited until after the expiration of the statute of limitations to remedy her lack of knowledge and mere lack of knowledge as to the identity of the Proposed Defendants is insufficient to establish factual mistake for relation back purposes." *Id.* Similarly, the County Defendants claim that Plaintiff failed to make diligent efforts to ascertain the identity of these individuals prior to the expiration of the statute of limitations. *Id.* at 16-18. The County Defendants stress that the Proposed Defendants did not hold high ranking positions from which they could have learned of this lawsuit, and even if they were aware of the litigation, *arguendo*, the Complaint and the PAC contain different allegations regarding the Proposed Defendants' knowledge and involvement in the alleged acts of Defendant Barber. *Id.*

## C. Analysis

### 1. Rule 16(b)

In order to grant leave to amend the Complaint under Rule 16(b), the Court must determine whether Plaintiff has demonstrated good cause for the proposed amendments. *Parker*, 204 F.3d at 339; *see 246 Sears Road Realty Corp.*, 2012 WL 4174862, at *9. Based on the analysis set forth in Section II(B), *supra*, in order to determine whether Plaintiff has shown good cause, the Court must decide (1) whether despite Plaintiff's having exercised diligence, the applicable deadline could not have been reasonably met, and (2) whether the amendment of the pleading at this stage of litigation will prejudice the Defendants. *See* Section II(B), *supra*.

### a. Diligence

A party is not considered to have acted diligently where the proposed amendment is based on information that the party knew, or should have known, in advance of the motion deadline. *See Parker*, 204 F.3d at 340-41; *Sokol*, 2009 WL 2524611, at *8. As noted, Plaintiff claims that she only recently became aware of the alleged misconduct committed by the Proposed Defendants through the discovery process. Counsel points out that discovery has not been completed, document disclosure is ongoing, and depositions have not yet commenced. Pl.'s Mem. at 2. The Court finds that Plaintiff's explanation is sufficient to demonstrate diligence. Without the names of the supervisory officials or the information contained in the District Attorney's investigation file, Plaintiff could not have known to include the additional Defendants or claims before the deadline to amend. As such, Plaintiff filed the instant motion based on evidence unavailable and unknowable to the Plaintiff at the time of the filing of the Complaint. Therefore, the applicable deadline could not have

reasonably been met and Plaintiff acted with diligence under Rule 16(b).  *See Estate of Ratcliffe v. Pradera Realty Co.*, No. 05 Civ. 10272, 2007 WL 3084977, at *4 (S.D.N.Y. Oct. 19, 2007) (finding good cause standard satisfied where the moving party based its proposed amendment on evidence discovered subsequent to the expiration of the discovery deadline); *New Yuen Fat Garments Factory Ltd.*, No. 07 Civ. 8304, 2009 WL 1515696, at *3 (S.D.N.Y. 2009) (holding that Plaintiff showed good cause to permit the addition of  a tortious interference cause of action to its complaint based on evidence not available to Plaintiff prior to discovery); *Enzymotec Ltd., Inc.*, 754 F. Supp. 2d 527, 537 ("good cause" found to grant plaintiff leave to amend complaint to add breach of contract claim nine months after deadline to amend expired "because delayed discovery and settlement negotiations deferred its ability to discover the facts supporting the proposed cause of action").

### b.      Prejudice

The County Defendants assert that the Proposed Defendants will be prejudiced by the PAC because they will "forego a meaningful opportunity to participate in discovery, dispositive motions, and defend this new and distinct theory of liability" if the Plaintiff is permitted to amend.  Defs.' Opp.  at 9.  While the County Defendants may have to defend themselves against additional claims, the claims stem from information recently made available to Plaintiff.  Further, the discovery phase of this case is not yet completed and discovery is stayed at this time; therefore, the County Defendants would not be deprived of any meaningful opportunity to conduct discovery related to the proposed amendments or to file any dispositive motion.  Even assuming some prejudice to the Defendants, the Court finds that any such prejudice is insufficient to overcome the finding that Plaintiff has exercised diligence in moving to amend.  *See, e.g., Armstrong Pump, Inc. v. Hartman*, No. 10

CV 446S, 2013 WL 6230110, at *5 (W.D.N.Y. Dec. 2, 2013) (noting that courts *may* consider prejudice to the opposing party but that diligence is the primary factor under the Rule 16 analysis); *accord Kassner*, 496 F.3d at 244. Notwithstanding this finding, however, Plaintiff's motion must still be denied based on futility under Rule 15(c) and Rule 15(a).

### 2. *Relation back to a Timely Filed Complaint under Rule 15(c)*

Plaintiff's Complaint was filed on December 15, 2010. *See* Compl. Plaintiff's motion to amend was filed on April 26, 2013. *See* PAC. The statute of limitations for claims brought pursuant to 42 U.S.C. § 1983 depends on the law of the state in which the claims are brought. For cases brought in New York, the statute of limitations is three years. *See Patterson v. Cnty. of Oneida*, 375 F.3d 206, 225 (2d Cir. 2004); *Rodriguez v. City of N.Y.*, No. 10-CV-1849, 2011 WL 4344057, at *2 (S.D.N.Y. Sept. 7, 2011). Since the facts underlying the Complaint occurred in 2007, the statute of limitations has run for filing any Section 1983 claims related to events which took place in 2007. Thus, in order to amend a pleading to include the Proposed Defendants, the claims must relate back as provided by Rule 15(c). As such, Plaintiff must demonstrate that: "(1) the new claims 'arose out of the conduct, transaction, or occurrence' set forth in the original pleading, and (2) 'within the period provided for by Rule 4(m) for serving the summons and complaint,' the new party 'received such notice of the action that it will not be prejudiced in defending on the merits,' and (3) during the Rule 4(m) service period the new party 'knew or should have known that the action would have been brought against it, but for a mistake concerning the proper party's identity.'" *Curry v. Campbell*, No. 06-CV-2841, 2012 WL 1004894, at *3 (E.D.N.Y. Mar. 23, 2012) (quoting Fed. R. Civ. P. 15(c)(1)(C)); *Soto v. Brooklyn Corr. Facility*, 80 F.3d 34, 35 (2d Cir. 1996); *Lewis v. City of N.Y.*, No. 12–CV–2836, 2013 WL 6816615, at *4 (E.D.N.Y. Dec. 24, 2013); *Maccharulo v. Gould*,

No. 08 Civ. 301, 643 F.Supp.2d 587, at *594 (S.D.N.Y Aug. 14, 2009). The Court

examines each of these three requirements in turn.[3]

### a. Whether the Conduct Arises Out of the Same Conduct as the Original Pleading

The County Defendants concede that "there is no argument to be made that

[Plaintiff's] claims did not arise out of the same underlying conduct or occurrence." Def.'s

Opp. at 11. The main distinction between the Complaint and the PAC is the addition of the

Proposed Defendants. The underlying allegations against the Defendants regarding the abuse

sustained by Plaintiff remains the same, and the claims arise out of the same transactions as

those described in the Complaint. Therefore, the Court finds that the Plaintiff has satisfied

the first element of the relation back test. *See Djangmah v. Falcone*, No. 08 Civ. 4027, 2013

WL 1195261, at *3 (S.D.N.Y. Mar. 25, 2013); *Mendoza v. Cnty. of Nassau*, No. 11-CV-

02487, 2012 WL 4490539, at *11 (E.DN.Y. Sept. 27, 2012) (finding that original and

proposed amended complaint arise out of the same conduct).

### b. Whether the Proposed Defendants Received Notice of the Action within the Rule 4(m) Period

In order to satisfy the second prong of the relation back test, a plaintiff must

demonstrate that "'within the period provided by Rule 4(m) for serving the summons and

complaint' (which is ordinarily 120 days from when the complaint is filed, *see* Rule 4(m)),

---

[3]     "'In deciding whether to apply state or federal relation back law, the Court must
determine which law affords a more forgiving principle of relating back,' and apply that
principle." *Baez v. JetBlue Airways*, No. 09-CV-596, 745 F. Supp. 2d 214, 222 n.6
(E.D.N.Y. Oct. 15, 2010) (citing *Williams v. United States*, No. 07 Civ. 3018, 2010 WL
963474, at *11 (S.D.N.Y. Feb. 25, 2010)). The Court has reviewed the applicable New
York relation back standard and finds the federal standard to be more forgiving as applied
in this particular case. Therefore, the Court addresses only the federal relation back
standard of Rule 15(c). *See Baez*, 745 F. Supp. at 222 n.6 (finding federal relation-back
standard more forgiving than New York State standard).

the newly named defendant must have 'received such notice of the action that it will not be prejudiced in defending on the merits.'" *Krupski*, 130 S. Ct. at 2491-92 (quoting Rule 15(c)(1)(C)(I)). Although actual notice is preferable, constructive notice may be sufficient. *Curry*, 2012 WL 1004894, at *3; *Smith v. Westchester Cnty. Dep't of Corr.*, No. 07-CV-1803, 2012 WL 527222, at *4 (S.D.N.Y. Feb. 15, 2012). "Constructive notice is derived from the presumed knowledge of the attorney who represents the original defendant(s) and who would represent the prospective defendant(s) if leave to amend were granted." *Smith*, 2012 WL 527222, at *4; *Archibald v. City of Hartford*, No. 3:09cv1558, 274 F.R.D. 371, 380 (D.Conn. May 9, 2011). Knowledge of the lawsuit will be imputed to the attorney who represents the original defendants "so long as there is some showing that the attorney knew that additional defendants would be added to the existing suit." *Id*. at *5; *Byrd v. Abate*, 964 F. Supp. 140, 146 (S.D.N.Y. 1997); *Rodriguez*, 2011 WL 4344057, at *7. "In most cases where courts in this Circuit have applied the constructive notice doctrine, the attorneys had 'clear knowledge of the identity of the unidentified defendant, within the limitations period, such that it would be logical to assume that a reasonable attorney would either (1) inform his client of the prospective lawsuit or (2) takes steps to begin preparing a defense.'" *Lewis*, 2013 WL 6816615, at *5 (quoting *Velez v. Fogarty*, No. 06-CV-13186, 2008 WL 5062601, at *6 (S.D.N.Y. Nov. 20, 2008); *Archibald*, 274 F.R.D. at 380; *Curry*, 2012 WL 1004894, at *4.

Plaintiff filed her Complaint on December 15, 2010. Therefore, Plaintiff's Rule 4(m) period ended on April 14, 2011 — 120 days from the filing of their Complaint. As noted, the County Defendants argue that Plaintiff failed to provide the Proposed Defendants with actual or constructive notice within the 120 day period, *i.e.*, Plaintiff's counsel (i) failed to put

Defendants' counsel on notice that other individuals might be sued and (ii) failed to include "John Does" as placeholders in the Complaint. Def.'s Opp. at 11-12. Meanwhile, Plaintiff asserts that the Proposed Defendants were represented by the same attorney, the County Attorney's Office, and that "'under the constructive notice doctrine, the court can impute knowledge of a lawsuit to a new defendant government official through his attorney, when the attorney[s] knew that the additional defendants would be added to the existing suit.'" Pl.'s Reply at 2 (citing *Pape v. Bd. Of Educ. Of the Wappingers Cent. Sch. Dist.*, No. 07-CV-8828, 2009 WL 3151200 (S.D.N.Y. Sept. 29, 2009); *Muhammad v. Pico*, No. 02-CV-1052, 2003 WL 21792158, at *20 (S.D.N.Y. Aug. 5, 2003)). Plaintiff also asserts that the District Attorney documents which were only recently disclosed to Plaintiff's counsel have been in the possession of counsel for the County Defendants since the criminal investigation began, and, thus, it is "ludicrous" for the County to now claim they were not on notice that these supervisors would be named. Pl.'s Reply at 2.

The Proposed Defendants' positions as supervisors of Defendant Barber during the period of his alleged sexual assault, combined with their documented concern regarding Defendant Barber's behavior towards Plaintiff as evidenced in the Nassau County District Attorney's investigation file may have prompted counsel for the County Defendants to (i) have sufficient knowledge of the identity of the Proposed Defendants; and (ii) inform them of the lawsuit and take steps to begin preparing a defense. *See Blaskiewicz,* 29 F. Supp. 2d at 139 ("notice to [added defendant] may be imputed through the Attorney General's office, which represents both [added defendant] and the previously named defendants"); *Byrd*, 964 F. Supp. at 146. ("Notice of a lawsuit can be imputed to a new defendant state official through his attorney, when the attorney also represents the officials originally

sued."); *Samuels v. Dalsheim*, 81 Civ. 7050, 1995 WL 1081308, at *14 (S.D.N.Y. Aug. 22, 1995) ("It is sufficient for the purpose of constructive notice that . . . defendants' counsel knew or should have known that a particular category of defendants would be added to the action, without necessarily knowing the actual identity of each defendant to be added."); *Curry*, 2012 WL 1004894, at *4-*5 (E.D.N.Y. March 23, 2012) (finding constructive notice of sergeant defendant based upon investigations undertaken as part of attorney's representation of original defendants revealing sergeant defendant was in command of the scene from the time of plaintiff's arrest to the time he was taken away by ambulance, even though Complaint did not name sergeant defendant, or suggest on its face that other individuals may have been involved in the alleged incident). However, as outlined more fully in Section IV(A)(3), *infra*, the District Attorney files may not have put the County Defendants' on notice of the potential addition of the Proposed Defendants because the documents do not necessarily illustrate that the Proposed Defendants were aware of or involved in the constitutional violations here. In any case, the Rule 15(c) analysis fails under the third prong, as outlined below.

    c. **Whether the Proposed Defendants Knew or Should Have Known that the Action Would Have Been Brought Against Them But for a Mistake**

   The final prong of the relation back doctrine requires that the Proposed Defendants "knew or should have known that the action would have been brought against [them], but for a mistake concerning the proper party's identity." Fed. R. Civ. P. 15(c). "Rule 15(c)(1)(C)(ii) asks what the prospective *defendant* knew or should have known during the Rule 4(m) period, not what the *plaintiff* knew or should have known at the time of filing her original complaint." *Krupski v. Costa Crociere,* ⸺ U.S. ⸺, 130

S.Ct. 2485, 2493, 177 L.Ed.2d 48 (2010) (emphasis in original). "Following the Supreme

Court's decision in *Krupski,* the Second Circuit's 'holding that a lack of knowledge is not

a mistake is still intact.'" *Urena v. Wolfson*, No. 09-CV-1107, 2011 WL 7439005, at *4

(E.D.N.Y. Aug. 24, 2011); *Dominguez v. City of N.Y.*, No. 10 Civ. 2620, 2010 WL

3419677, at *6 (E.D.N.Y. Aug. 27, 2010); *see Barrow v. Wethersfield Police Dep't,* 66

F.3d 466, 470 (2d Cir. 1995).

Notwithstanding the foregoing provisions, as a threshold matter, courts in this

district and other federal districts have held that Rule 15(c) does not apply in cases where

a plaintiff seeks to add an *additional* party as a defendant, as is the case here. For

example, as the Court in *In re Vitamin C Antitrust Litigation* recently explained:

> Rule 15(c)(1)(C) does not encompass just any mistake. It
> requires a mistake "concerning *the proper party's identity*"
> . . . . As a matter of plain language, this provision would
> appear to include only "wrong party" cases, and not
> "additional party" cases. This is because the "mistake" has
> to "concern[ ]" the "identity" of the "proper party [ ]." In an
> "additional party" case like this one, there generally will be
> no "mistake concerning" the proper party's "identity." The
> plaintiff has sued the right defendant, and simply neglected
> to sue another defendant who might also be liable. If the
> drafters of Rule 15 had meant to allow relation back in this
> situation, they could have easily done so.
>
> . . . .
>
> Where a plaintiff has not mistakenly sued the wrong party, a
> court need not consider what a defendant knows and when
> the defendant knew it; the threshold requirement for Rule
> 15(c)(1)(C)—a "mistake concerning the proper party's
> identity"—has not been met.

*In re Vitamin C Antitrust Litigation*, --- F. Supp. 2d ---, 2014 WL 351896, at *3

(E.D.N.Y. 2014) (citing Fed. R. Civ. P. 15(c)(1)(C)); *Turner v. Nicoletti*, No. 12–1855,

2013 WL 3989071, at *3 (W.D.Pa. Aug. 2, 2013) (distinguishing *Krupski* and declining

to grant relief under Rule 15(c) where "[p]laintiff did not identify the wrong parties . . . in his Complaint despite having sufficient information available to correctly identify them . . . . [Rather, plaintiff] has sued *additional parties for additional and different reasons.*") (emphasis in original)).

In any case, even assuming the threshold requirement for examination under Rule 15(c) has been met, the Court in *In re Vitamin C Antitrust Litigation* noted that "the most plaintiffs can say is that they were unaware of [the proposed defendant's] participation in the [allegations giving rise to the complaint] when they filed their first consolidated amended complaint . . . . In the Second Circuit, however, lack of knowledge does not constitute a 'mistake' for relation back purposes." 2014 WL 351896, at *3 (citing *Barrow v. Wethersfield Police Dep't*, 66 F.3d 466, 470 (2d Cir.1995)).

Indeed, recognizing that "lack of knowledge does not meet the threshold for the element of mistake with the relation back doctrine," Pl.'s Reply at 3, Plaintiff requests that an exception be made in this case. *Id.* Plaintiff argues that the stay in this case which was necessary due to Defendant Barber's criminal prosecution prevented her from timely discovering the Proposed Defendants' identities. *Id.* Further, Plaintiff maintains that document releases (presumably for the District Attorney's files) were timely executed on December 3, 2012, prior to the expiration of the stay, and that counsel diligently continued to follow-up on obtaining this discovery. *Id.*

First, the Court notes that the stay of the criminal action was not requested until April 15, 2011. DE 10. Judge Feuerstein did not grant the stay until April 19, 2014. DE 11. As noted, Plaintiff filed her Complaint on December 15, 2010. Therefore, Plaintiff's Rule 4(m) period ended on April 14, 2011 — 120 days from the filing of their

Complaint. Thus, the Rule 4(m) period expired prior to the stay of this action, and Plaintiff's assertion that an exception be made due to complications arising from the stay is, unfortunately, unavailing. Further, as the court in *In re Vitamin C Antitrust Litigation* explained, adopting Plaintiff's theory of relation-back here essentially eviscerates the statute of limitations requirements:

> The theory upon which plaintiffs rely—that they were unaware of [the proposed defendant's] "role and status in the alleged conspiracy"—is a familiar one . . . . But the statute of limitations "is not tolled for a plaintiff's leisurely discovery of the full details of the alleged scheme." *Glonti v. Stevenson*, No. 08 cv 8960, 2009 WL 311293, at *10 (S.D.N.Y. Feb. 6, 2009). Adopting plaintiffs' expansive theory of relation back would gut the policies underlying periods of limitation, because filing a complaint would effectively become an indefinite toll of the statute of limitations against any defendants who learn of the action and who might also be liable for the conduct alleged, under the theory that those defendants "should have known" that the plaintiff had made a "mistake" in not suing them as well. Relation-back would swallow the general principles of statutes of limitations.

*In re Vitamin C Antitrust Litigation*, --- F. Supp. 2d ---, 2014 WL 351896, at *3; *Glonti*, 2009 WL 311293, at *10 (finding that plaintiffs knew that the proposed defendants were in the chain of command, and that if they did not recall defendants' names they could have sued them as "John Does" until they were able to identify them in discovery).

Based on the foregoing analysis, the Court finds that Plaintiff has not met the third prong of the Rule 15(c) analysis, *i.e.*, the requirement that the Proposed Defendants should have known they would be named as defendants but for a mistake. Significantly, even if the Court found that the proposed amendments were permissible under Rule 15(c), Plaintiff's motion to amend nonetheless fails under Rule 15(a) for the reasons which follow.

### 3. Rule 15(a): Futility

The County Defendants argue that Plaintiff's motion should be denied because the proposed amendment is futile. Defs.' Opp. at 7. A proposed amendment is futile when it fails to state a claim upon which relief can be granted. *See Dougherty v. Town of N. Hempstead Bd. of Zoning Appeals*, 282 F.3d 83, 88 (2d Cir. 2002); *Health-Chem Corp. v. Baker*, 915 F.2d 805, 810 (2d Cir. 1990). In addressing the proposed futility of an amendment, the proper inquiry is comparable to that utilized in considering a motion to dismiss pursuant to 12(b)(6) of the Federal Rules of Civil Procedure. *See Aetna Cas. and Sur. Co. v. Aniero Concrete Co., Inc.*, 404 F.3d 566, 604 (2d Cir. 2005). The Supreme Court clarified the appropriate pleading standard in *Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, in which the court set forth a two-pronged approach to be utilized in analyzing a motion to dismiss. District courts are to first "identify [ ] pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." 129 S. Ct. at 1950. Though "legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Id.; Brookfield Asset Mgmt., Inc. v. AIG Fin. Prods. Corp.*, No. 09-CV-8285, 2010 WL 3910590, at *4 (S.D.N.Y. Sept. 29, 2010) ("A complaint is inadequately pled 'if it tenders naked assertions' devoid of 'further factual enhancement.'") (quoting *Iqbal*, 129 S.Ct. at 1949). Second, if a complaint contains "well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a [d]efendant has acted unlawfully." *Id.* at

1949 (citing *Twombly*, 550 U.S. at 556-57) (internal citations omitted); *see Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955 (2007) ("A complaint should not be dismissed unless it does not set forth "enough facts to state a claim to relief that is plausible on its face.").

Section 1983 provides that:

> [e]very person who, under color of any statute, ordinance, regulation, custom or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured.

42 U.S.C. § 1983. To state a claim under Section 1983, a plaintiff must allege conduct attributable to a person acting under color of state law which deprived the plaintiff of a right secured by the Constitution or laws of the United States. *See Feingold v. N.Y.*, 366 F.3d 138, 159 (2d Cir. 2004) (quoting *West v. Atkins*, 487 U.S. 42, 48, 108 S.Ct. 2250 (1988)). Therefore, a Section 1983 claim has two essential elements: (1) the defendant acted under color of state law, and (2) as a result of the defendant's actions, the plaintiff suffered a denial of her federal statutory rights, or her constitutional rights or privileges. *See Palmieri v. Lynch*, 392 F.3d 73, 78 (2d Cir. 2004); *Annis v. Cnty. Of Westchester*, 136 F.3d 239, 245 (2d Cir. 1998); *Bristol v. Queens Co.*, No. CV 09-5544, 2013 WL 1121264, at *5 (E.D.N.Y. Feb. 27, 2013); *Quinn v. Nassau Cnty. Police Dep't*, 53 F. Supp. 2d 347, 354 (E.D.N.Y. 1999) (Section 1983 "furnishes a cause of action for the violation of federal rights created by the Constitution.") (citation omitted).

An official violates the Eighth Amendment when two requirements are met: (1) the alleged punishment must be "objectively, sufficiently serious;" and (2) the prison official must have a "sufficiently culpable state of mind." *Boddie v. Schneider*, 105 F.3d

857, 861 (2d Cir. 1997); *Singletary v. Tomarken*, No. 13-CV-4727, 2013 WL 6531083, at *2 (E.D.N.Y. Dec. 13, 2013) (citing *Hill v. Curcione*, 657 F.3d 116, 122 (2d Cir. 2011)). In the prison context, courts have defined this culpability as "deliberate indifference" to the health and safety of inmates. *See Farmer v. Brennan*, 511 U.S. 825, 834, 114 S. Ct. 1970, 1977 (1994); *Estelle v. Gamble*, 429 U.S. 97, 104, 97 S.Ct. 285 (1976). Indeed, the Eighth Amendment accordingly proscribes sexual abuse by prison officials. *See Boddie*, 105 F.3d at 860–61 (holding that "sexual abuse of a prisoner by a corrections officer may in some circumstances violate the prisoner's right to be free from cruel and unusual punishment"); *Vaughn v. Strickland*, 12 CIV. 2696, 2013 WL 3481413, at *4 (S.D.N.Y. July 11, 2013).

Because *respondeat superior* does not apply in Section 1983 actions, "[i]t is well settled in this Circuit that 'personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983." *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994) (quoting *Moffit v. Town of Brookfield*, 950 F.2d 880, 885 (2d Cir.1991)); *Medina v. Donaldson*, No. 10 Civ. 5922, 2014 WL 1010951, at *6 (E.D.N.Y. Mar. 14, 2014). Along these lines, an individual defendant cannot be held liable for damages simply because he or she holds a supervisory position. *See Black v. Coughlin*, 76 F.3d 72, 74 (2d Cir. 1996) (finding that "a defendant in a § 1983 action may not be held liable for damages for constitutional violations merely because he held a high position of authority."); *Bristol*, 2013 WL 1121264, at *21.

However, the Second Circuit has held that liability may attach if the supervisor "(1) directly participated in the violation; (2) failed to remedy the violation after learning of it through a report or appeal; (3) created a custom or policy fostering the violation or allowed the custom or policy to continue after learning of it; (4) was grossly negligent in

supervising subordinates who caused the violation; or (5) the defendant exhibited deliberate indifference to the rights of inmates by failing to act on information indicating that unconstitutional acts were occurring. *Colon v. Coughlin*, 58 F.3d 865, 873 (2d. Cir. 1995); *see Sealey v. Giltner*, 116 F.3d 47, 51 (2d Cir. 1997); *Williams v. Smith*, 781 F.2d 319, 323–24 (2d Cir.1986). Notably, the Supreme Court decision in *Iqbal* found that "a plaintiff must plead that each defendant, through the official's own individual actions, has violated the Constitution." Further, the Court in *Iqbal* rejected the respondent's argument that a supervisor's "mere knowledge of his subordinate's discriminatory purpose amounts to the supervisor's violating the Constitution." *Iqbal*, 556 U.S. at 677.

Some district courts have subsequently found that *Iqbal* has narrowed the grounds upon which supervisors are liable. *Bouche v. City of Mount Vernon*, No. 11 Civ. 5246, 2012 WL 987592, at *8 (S.D.N.Y. Mar. 23, 2012). In fact, several courts have opined that only the first and third factors have survived. *See Bouche*, 2012 WL 987592, at *8 (S.D.N.Y. Mar. 23, 2012) (finding only first and third factors of test for supervisory liability survive); *Spear v. Hugles*, No. 08 Civ. 4026, 2009 WL 2176725, at *2 (S.D.N.Y. July 20, 2009) (same); *Bellamy v. Mount Vernon Hosp.*, 2009 WL 1835939, *6 (S.D.N.Y. June 26, 2009) ("Only the first and part of the third . . . categories pass *Iqbal's* muster—a supervisor is only held liable if that supervisor participates directly in the alleged constitutional violation or if that supervisor creates a policy or custom under which unconstitutional practices occurred."); *accord Newton v. City of N.Y.*, 640 F. Supp. 2d 426, 448 (S.D.N.Y.2009) ("[P]assive failure to train claims pursuant to section 1983 have not survived the Supreme Court's recent decision in *Ashcroft v. Iqbal*.").

In any case, the Court finds that Plaintiff's allegations against the Proposed

Defendants do not fit into any of the permissible categories for Section 1983 liability,

even before *Iqbal*. First, there are no allegations in the PAC that the Proposed

Defendants directly participated in the violations. As noted, Plaintiff claims in her reply

that the PAC

> sets forth that the proposed Defendants themselves were
> acting along with, were accomplices with, and conspired
> with Defendant Barber to violate the Eighth Amendment
> rights of Plaintiff by covering up Barber's violations and
> misconduct, by not reporting his misconduct, by not
> disciplining him, and by allowing him to continue to have
> unfettered access to female inmates, even after knowing of
> his misconduct, so that he could continue to rape and abuse
> them.

Pl.'s Reply at 1. Despite these representations in Plaintiff's reply memorandum, the

Court finds no allegations in the PAC that the Proposed Defendants "conspired" with

Barber or served as "accomplices" in order to allow Barber to continue to rape and abuse

women, or any other allegations of direct involvement. The Court finds that the Plaintiff

has not sufficiently alleged direct participation of the Proposed Defendants in the

constitutional violations. *See Vaughn v. Strickland*, 12 CIV. 2696, 2013 WL 3481413, at

*4 (S.D.N.Y. July 11, 2013) ("[T]o date in this Circuit there has been 'no case in which a

plaintiff ha[s] established an actionable claim of sexual harassment under *Boddie* without

having physical contact with the alleged perpetrator.'") (quoting *Vogelfang v. Capra*, 889

F. Supp. 2d 489, 508 (S.D.N.Y. 2012)).

Nor are there facts asserted here to support a conclusion that the Proposed

Defendants had specific knowledge of Barber's acts of sexual abuse, sexual assault, or

rape, or that the Proposed Defendants failed to remedy these violations after learning of

them through a report or appeal.  *See Bristol v. Queens County*, No. 09–cv–5544, 2011 WL 6937468, at *8 (E.D.N.Y. Feb. 28, 2011), *report and recommendation adopted by* 2012 WL 10484 (E.D.N.Y. Jan. 3, 2012).  Plaintiff alleges that the Proposed Defendants "knew or should have known" about Barber's constitutional violations.  PAC at 10-11. However, the Court in *Iqbal* rejected the respondent's contention that "mere knowledge of his subordinate's discriminatory purpose amounts to the supervisor's violating the Constitution."  *Iqbal*, 556 U.S. at 677; *Broschart v. O'Connor–Ryerson,* No. 11–CV– 0405, 2012 WL 555307, at *3 (N.D.N.Y. Jan. 17, 2012) ("'[K]new or should have known' is not the applicable test for deliberate indifference."), *adopted by* 2012 WL 555407 (N.D.N.Y. Feb. 21, 2012); *accord Bellamy,* 2009 WL 1835939, at *6 (plaintiff's "conclusory allegations that [defendant] must have known about [his plight] [were] not enough to impute section 1983 liability.").

For example, the District Attorney's investigative report shows that the Proposed Defendants had concerns about Barber's conduct, including (i) the closeness of the relationship between Barber and Plaintiff; (ii) the fact that Barber was visiting Plaintiff frequently; and (iii) Barber was inappropriately taking grievances in the recreation yard. Pl.'s Mem., Ex. 1, 2, and 3.  Bailey was concerned about these instances due to his own observations and the reports of other officers.  *Id.*  Bailey also reported his concerns to Proposed Defendant Ford.  *Id.*  In fact, according to the District Attorney's investigative file, Ford confronted Barber about his relationship with the Plaintiff and Barber told him that his mother and Plaintiff's mother were friends and that their families were friends. Pl.'s Mem., Ex. 3.  Ford stated that he did not report Barber's relationship with Plaintiff to Internal Affiars "because he did not have any concrete allegations of misconduct."  *Id.*

Indeed, none of the behaviors observed by Bailey or the reports of the other officers support the conclusion that Bailey or Ford had first or second-hand knowledge of (or involvement in) Barber's acts of sexual abuse, sexual assault, or rape. That the Proposed Defendants had knowledge of the behaviors described here — which behaviors do not amount to constitutional violations, but rather non-criminal and non-constitutional violations of NCCC rules by other Corrections officers — does not create liability under Section 1983. Nor do Plaintiff's conclusory allegations in the PAC that the Proposed Defendants knew about the sexual assault and rape. *See Bellamy*, 2009 WL 1835939, at *6 (no supervisory liability where plaintiff wrote three complaint letters to defendant's office but where there was no evidence that defendant created or contributed to a policy or custom of unconstitutional practices or made any decisions regarding defendant's medications, because plaintiff's "conclusory allegations that [defendant] must have known about [his plight] [was] not enough to impute section 1983 liability"); *Warrender v. U.S.*, No. 09–cv–2697, 2011 WL 703927, at *5 (E.D.N.Y. Feb. 17, 2011) (dismissing Section 1983 claims where defendants should have received the plaintiff's medical records and/or medications and therefore been on notice of plaintiff's medical conditions, but where plaintiff provided no allegations or evidence that he requested or was denied medicine from the defendants and therefore failed to allege personal involvement); *Toole v. Connell*, No. 9:04-CV-0724, 2008 WL 4186334, at *7 (N.D.N.Y. Sept. 10, 2008) (dismissing claim against supervisors where plaintiff filed grievance after corrections officer sexually propositioned inmate on multiple occasions and shook his buttocks at him, because officer's behaviors did not rise to the level of constitutional significance, and "[t]he mere failure to investigate an allegation of unconstitutional activity, without

more . . . does not provide a basis for finding liability under section 1983"); *Bodie v. Morgenthau*, 342 F. Supp. 2d 193, 203 (dismissing Section 1983 claims against proposed defendants based on fact that they were never made aware of any constitutional violations; plaintiff only informed proposed defendants of a "bureaucratic error" and not actions "barred by the Constitution or federal law").

Moreover, only conclusory allegations are proffered to support Plaintiff's claim that the Proposed Defendants were deliberately indifferent or grossly negligent in supervising Barber, or that they created a custom or policy fostering constitutional violations or allowed one to continue after learning of it. Specifically, Plaintiff alleges that the "Defendant supervisors," including the Proposed Defendants, "were personally involved in both the deprivation of Ms. Erdogan's constitutional rights and in creating or condoning the policy or custom of failing to take preventative and remedial measures to guard against such constitutional deprivations." PAC ¶ 54. Plaintiff further maintains that (i) the Defendant supervisors were reckless in their failure to supervise Mark Barber, and knew or should have known that Barber was sexually abusing female inmates and that the conduct against Plaintiff was likely to occur; and (ii) the failure of the supervisory defendants to train, supervise, and discipline Barber amounted to gross negligence. *Id.* ¶¶ 55-57. The Court finds that these allegations are conclusory and are not supported by sufficient factual averments as required under *Iqbal*. *See, e.g., Iqbal*, 129 S. Ct. at 1950; *Parris v. N.Y.S. Dep't of Corr. Servs.*, 947 F. Supp. 2d 354, 364 (S.D.N.Y. 2013) ("Conclusory, unsupported allegations of gross negligence or the existence of a policy are simply insufficient to establish liability of supervisory prison officials under § 1983); *Rosario v. Fischer*, No. 11 Civ. 4617, 2012 WL 4044901, at *9

(S.D.N.Y. Aug. 28, 2012) (conclusory allegations of creating or fostering unconstitutional practice insufficient to establish personal involvement); *Cicio v. Graham,* No. 9:08-CV-534, 2009 WL 537534, at *7 (N.D.N.Y. Mar. 3, 2009) ("Vague and conclusory allegations that a supervisor has failed to train or properly monitor the actions of subordinate employees will not suffice to establish the requisite personal involvement and support a finding of liability."); *Pollack v. Nash*, 58 F. Supp. 2d 294, 300 (S.D.N.Y. 1999) (allegation that defendant "permitted the establishment of certain customs which encourage, allow, or suffer the prosecution of child abuse cases without sufficient evidence utterly fails to comport with the requirement that a civil rights complaint must contain 'more than mere conclusory allegations'") (citing *Williams*, 781 F.2d at 323).  Consequently, Plaintiff's motion to add the Proposed Defendants is futile, and, therefore, Plaintiff's Motion to Amend the Complaint must be DENIED.

IV.    <u>CONCLUSION</u>

Based on the foregoing analysis, Plaintiff's motion to amend the Complaint is DENIED.

**SO ORDERED:**

Dated: Central Islip, New York
       March 25, 2014

                                        /s/ A. Kathleen Tomlinson
                                        A. KATHLEEN TOMLINSON
                                        U.S. Magistrate Judge